BEAN *v.* GRANGER.

MORTGAGES—FORECLOSURE—ALLOWANCE OF CREDITS—EQUITY.
  On bank receiver's foreclosure of real estate mortgage given by mother and her husband to secure her sons' indebtedness to bank which was also secured by chattel mortgage on their road construction machinery, after bank agreed to transfer chattel mortgage to mother, disallowance of credit for steam shovel traded in on new shovel *held,* not inequitable notwithstanding mother did not receive chattel mortgage security, where bank did not profit nor mortgagors lose any chattel mortgage security because of exchange of steam shovels.

Appeal from Berrien; Evans (Fremont), J. Submitted April 21, 1936. (Docket No. 146, Calendar No. 38,944.) Decided June 4, 1936.

Bill by W. Worth Bean, Jr., receiver of Berrien County Bank, against A. E. Granger and Elizabeth Granger to foreclose a mortgage. Decree for plaintiff. Defendants appeal. Affirmed.

*Charles W. Gore,* for plaintiff.

*F. L. Hammond,* for defendants.

NORTH, C. J. Appellants are defendants in a mortgage foreclosure suit. Their appeal is based upon a claim that the amount decreed due and unpaid on the mortgage is excessive. The controversy arises from appellants' contention that the bank of which plaintiff is receiver wrongfully consented to the sale of a steam shovel on which appellants had a chattel mortgage lien, and that their security was thereby impaired to the amount of $3,000. For that reason they assert a right to credit in this amount on their mortgage indebtedness to the bank.

W. E. and L. G. Woodley were contractors engaged in road construction. Elizabeth Granger, one of the defendants, is their mother. In September, 1926, she and her husband executed the mortgage in suit which covers real property owned by Mrs. Granger. This mortgage in the amount of $20,000 was given to secure the payment of the then-existing indebtedness of the Woodley Brothers to the Berrien County Bank. At the time the mortgage was given the secured indebtedness amounted to $18,250. It was later reduced to $8,300. At the time of taking this mortgage the bank also held as security for the indebtedness of the Woodley Brothers a chattel mortgage on their road construction machinery. The chattel mortgaged property was of the approximate value of $17,000, and included a steam shovel valued at $3,000. In consequence of an assignment of the interest of the Woodley Brothers in their road contracts to the bank, it received from time to time contract payments due the Woodley Brothers and credited the same on their indebtedness to the bank.

Just prior to the time the Granger mortgage was given the bank examiner was pressing the Berrien County Bank to obtain an adjustment of the Woodley Brothers' indebtedness. Thereupon, after consultation with the Woodley Brothers, the bank through its cashier, Mr. Ross, wrote to Mrs. Granger, then in Florida, and solicited her to give the mortgage in question to the bank. In this letter the bank stated:

"We, as and when the various amounts due now to them (Woodley Brothers) on contracts, have been paid to us and applied on the indebtedness, (are) to assign to you, for your having given this mortgage on your property, a chattel mortgage, which we now hold, as security, with the understanding that they have the right to sell any property, covered by the chattel mortgage, and apply the proceeds to the reduction of this debt. You, of course, to release, at any time required and requested, such property as may have been sold. You will see that this does two things: First, gives us real estate security, which the banking department will no doubt approve, and second, gives to you the chattel mortgage security, which the banking department does not approve, and best of all gives Guy and Will (Woodley) a new lease on life and puts them in a way, whereby they may continue to operate without possibility of being thrown into bankruptcy, or being deprived of their equipment."

The chattel mortgage referred to in the bank's letter covered a $3,000 steam shovel, as before noted. The payments due the Woodley Brothers, also mentioned in the bank's letter, were made to the bank; but the chattel mortgage was not assigned by the bank to Mrs. Granger, as the bank agreed in its letter. In March, 1929, the bank, through its cashier, together with one of the Woodley Brothers, traded the chattel mortgaged steam shovel at an agreed

price of $3,000 toward the purchase of a new steam shovel at a price of $13,750.

Mrs. Granger testified she never received the chattel mortgage and never consented to the sale of the chattel mortgaged property. However, the details of this chattel mortgage transaction were testified to by L. G. Woodley, a witness for defendants. We quote in part:

"The chattel mortgage mentioned in that letter was the chattel mortgage on all our equipment the Berrien County Bank had at the time the mortgage was executed. The face of this original chattel mortgage was around $20,000. * * *

"At the time this (steam shovel) was traded in under the terms of that letter my mother was entitled to this chattel mortgage and the property covered by it. * * *

"All property covered by the chattel mortgage and held by the bank and continued to be held by the bank and is held by the bank at the present time. And any new equipment we purchased from that time until the present time is held by the Berrien County Bank and on this chattel mortgage. Nothing was ever turned over to my people as security. The chattel mortgage was not turned over, it was continued from time to time. It was renewed several times until the present time and the present chattel mortgage certainly holds every piece of equipment that was on the chattel mortgage that was there originally. * * *

"I don't claim the bank got any of the money from the shovel I was allowed $3,000 for. I don't claim they got the money. * * * I got the benefit of the new shovel. It was in our name."

From the foregoing it appears the bank did not profit by the exchange of steam shovels, nor did defendants suffer a loss in their chattel mortgage security because the new and more valuable steam shovel

was substituted for the less valuable item theretofore covered by the chattel mortgage. Under the circumstances it would have been inequitable to have allowed defendants a $3,000 credit on the amount otherwise due the bank on the foreclosed mortgage.

At the time this case was tried in the circuit court the Woodley Brothers were indebted to the Berrien County Bank in excess of $18,000; but the trial judge held this real estate mortgage was given to secure only the indebtedness of the Woodley Brothers to the bank existing at the time the mortgage was given, September 26, 1926. This existing indebtedness having subsequently been reduced to $8,300, the principal sum for which foreclosure was allowed was limited to $8,300 which, with accrued interest, totaled $11,205. As above indicated, the circuit judge was correct in disallowing credit to defendants for the $3,000 item involved in this appeal.

The decree in the circuit court is affirmed, with costs to appellee.

FEAD, WIEST, BUTZEL, BUSHNELL, EDWARD M. SHARPE, and TOY, JJ., concurred. POTTER, J., took no part in this decision.